FILED IN CHAMBERS
U.S.D.C. Rome

NOV 1 4 2007

JAMES N. HATTEN, Clerk
By: _____
Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TAMMY ROBINSON,

        Plaintiff,

    v.

UNITED PARCEL SERVICE, INC.
and UPS CAPITAL CORPORATION,

        Defendants.

CIVIL ACTION

NO. 1:06-CV-2601-RLV

O R D E R

This is a wrongful termination action.  The plaintiff alleges that her former employers, United Parcel Service, Inc. and its subsidiary UPS Capital Corporation (collectively "UPS")[1], illegally terminated her because of her race and gender in violation of her rights under U.S.C.A § 1981, and that her termination was in retaliation for taking leave under the Family and Medical Leave Act ("FMLA").  She also alleges that UPS is liable for intentional infliction of emotion distress.  Pending before the court is UPS's Motion for Summary Judgment [Doc. No. 44].  For the following reasons, the motion is GRANTED.

---

[1]In the pending motion, the defendants argue that the claims against UPS Capital Corporation should be dismissed for insufficient service of process.  However, pursuant to Rule 12(h)(1) of the Rules of Civil Procedure, that defense has been waived in this case because it was not raised in a responsive pleading or an earlier motion.

**FACTUAL BACKGROUND**

The facts in this case are relatively straightforward.[2]  The plaintiff is an African-American female, who worked at UPS for over seven years.  After starting her career in 1998 as a tax associate in the UPS corporate office, the plaintiff was promoted in 2000 to tax specialist and then promoted again in 2004 to operations finance supervisor with UPS Capital.  In June 2005, the plaintiff was involuntarily reassigned to the position of risk analyst, a newly created lateral position in the Cash-On-Delivery ("COD") operations department.

---

[2]Pursuant to Local Rule 56.1 B.(1), UPS submitted with its motion for summary judgment a separate statement of material facts. Instead of submitting a response to each numbered statement of fact as required by Rule 56.1, however, the plaintiff responded with her own statement of material facts that were wholly unresponsive to each of UPS's statements.  Indeed, although her claims arise from her termination, the plaintiff's statement of facts does not even address many of the events leading up her termination that were specifically addressed in UPS's statement of facts and serve as the basis of its motion.  Because the plaintiff failed to respond to each of UPS's statements of material fact, those facts are deemed admitted by the plaintiff.  L.R. 56.1 B.(2)(a)(2).  This procedural error by the plaintiff, however, does not affect the analysis of UPS's motion.  Rather, it merely provides the court an expedient method to cut away the superfluous and irrelevant facts presented by the plaintiff in her unresponsive submission.  Moreover, the undisputed facts noted by the court are firmly established and have been acknowledged by the plaintiff in that she has impliedly and expressly relied upon them throughout her memorandum in opposition to the pending motion.

When certain UPS customers ship packages that the receiver pays for at the time of delivery (i.e., "cash-on-delivery" or "COD"), the COD operations group processes the payments collected by UPS drivers and then reimburses the shipper. The newly created risk analyst position within the COD operation group became responsible for two separate tasks related to COD customer account reconciliation that previously had been managed by a different department and had not been the exclusive responsibility of a single employee.

When the plaintiff was reassigned to the risk analyst position in June 2005, she reported to Diana Blaise, the COD operations manager, who is also an African-American female. During the time the plaintiff worked as a risk analyst, the only other employee that reported to Ms. Blaise was Tyffany Gunn, also an African-American female. In the first two months in her new role, the plaintiff was charged with resolving a certain amount of unreconciled accounts by August 9, 2005. She failed to meet the deadline. The plaintiff made excuses for her failure to Ms. Blaise, pointing to a temporary failure of the computer system that provided account access and the plaintiff's lack of experience and requisite skills necessary for conducting account reconciliation.

3

Nevertheless, on August 12, 2005, Ms. Blaise verbally counseled the plaintiff for her poor performance for having failed to complete her assigned tasks on time.   On August 24, the plaintiff's performance had not sufficiently improved so Ms. Blaise issued a written performance warning entitled "Constructive Action Form."  In her written warning, Ms. Blaise admonished the plaintiff for her failure to complete tasks on time, and she warned the plaintiff to take more responsibility for her work.  The written warning specified the plaintiff's deficiencies, and it delineated criteria for successful performance.  It also provided that the plaintiff was put on probation for thirty days, during which time the plaintiff could be subject to further disciplinary action, including termination, for failure to show improvement.

After both the August 12 verbal counseling and the August 24 written warning, the plaintiff understood that Ms. Blaise was not satisfied with her work. At this point, the plaintiff tendered her resignation but later agreed to stay on after discussing the matter with Ms. Blaise, who provided encouragement and told the plaintiff that she could be successful.

Subsequently, the plaintiff requested and was approved to take FMLA leave.[3]  She was away from work on FMLA leave from August 30 through October 10, 2005.

When the plaintiff returned to UPS, Ms. Blaise advised her that her written warning and probation were still in effect and that she was still responsible for accomplishing the tasks set forth in the August 24 warning.  Specifically, she was directed to clear within two weeks the sixty-six remaining unreconciled account items that had been assigned to her.  However, the plaintiff failed to clear all sixty-six items by the deadline.  Consequently, Ms. Blaise began daily meetings with the plaintiff to review her progress and plan of action.  Nearly two weeks later, and approximately a month after returning from FMLA leave, Ms. Blaise remained unsatisfied that the plaintiff was demonstrating satisfactory improvement.  Therefore, on November 8, 2005, Ms. Blaise terminated the plaintiff's employment.

Notably, much of the plaintiff's argument relies on a much broader base of facts than those that pertain only to her termination.  Instead of focusing only on the events that occurred

---

[3]The Family and Medical Leave Act ("FMLA") entitles eligible employees to take leave from work for certain family or medical reasons without being subject to discriminatory employment practices.  See 29 U.S.C.A § 2601(b).

in her new job as a risk analyst in the COD operations department and her termination from that position, the plaintiff also relies on the events that occurred previously during her tenure as an operations finance supervisor and her subsequent reassignment to the risk analyst position.  By including the circumstances of her reassignment, the plaintiff attempts to link the facts of that episode with the facts of her termination.  While many of her allegations regarding her reassignment are either immaterial or inadmissable, a fuller context can be provided for purposes of this motion by noting the pertinent facts of her reassignement as well.

As stated above, the plaintiff was involuntarily reassigned. Before her reassignment, the plaintiff worked as an operations finance supervisor under Rob Suba and Tom Rubright, both non-African-American males.   Just prior to being reassigned, the plaintiff was verbally counseled by Suba and Rubright for violating the company's policy of not sharing computer login identifications and she was later given a written warning by Mr. Suba for various other performance-related deficiencies.   The plaintiff contested the basis of Suba's allegations to Leona Rapelye, a human resources manager.   Apparently, Rapelye advised the plaintiff that Suba's allegations would be revised and that her employment record would not be adversely affected.

6

At the same time the plaintiff received her written warning from Suba, she was informed that she had been reassigned to the COD operations department as a risk analyst. Her replacement as an operations finance supervisor was Hernan Villalba, a non-African-American male and formerly one of the plaintiff's subordinates.

## MOTION FOR SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of his or her claim on which he or she bears the ultimate burden of proof. Id. at 322-23. In order to determine whether a factual issue exists, a court must view the evidence in the light most favorable to the non-moving party. Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989). Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the

7

'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 324.  Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322.

The plaintiff's complaint alleges three causes of action: (1) violation of the plaintiff's rights under § 1981 for terminating her employment on the basis of her race and gender; (2) violation of the Family and Medical Leave Act by terminating the plaintiff's employment for taking medical leave; and (3) intentional infliction of emotional distress.

### Section 1981

Because the plaintiff relies on circumstantial evidence, she must establish her claim under the burden shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 1824-25 (1973), which first requires a plaintiff to establish a prima facie case of discrimination, and then the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection," which can be overcome by the

plaintiff if she shows that the defendant's proffered reason is merely a pretext for discriminatory conduct.

To establish a prima facie case in this instance, the plaintiff must be able to show that (1) she is a member of a protected class, (2) she was subjected to adverse job action, (3) similarly situated employees outside of her class were treated more favorably, and (4) she was qualified for the job.  Knight v. Baptist Hosp. of Miami, Inc., 330 F.3d 1313, 1316 (11th Cir. 2003).[4]

UPS asserts that the plaintiff cannot establish a prima facie case of discrimination, and, alternatively, that even if she could, the plaintiff cannot show that UPS's reasons for her termination were illegitimate or that they were merely a pretext for discriminatory action.  For purposes of this motion, UPS admits that the plaintiff is a member of a protected class, that she was subjected to an adverse job action, and that she was qualified. However, UPS contends that the plaintiff has failed to meet her burden because she cannot establish the third prong of the prima

---

[4]This analytical framework pertains to both Title VII and section 1981 claims.  Shields v. Fort James Corp., 305 F.3d 1280, 1282 (11th Cir. 2002).

facie inquiry: that UPS treated similarly situated employees outside of her class more favorably.

Asserting that she can establish a similarly situated employee was treated more favorably, the plaintiff points to the non-African-American male who replaced her as operations finance supervisor, the position she had before being reassigned as a risk analyst. Thus, the plaintiff purports to establish a prima facie case of discrimination because UPS reassigned her to the risk analyst position and replaced her with someone outside of her protected class.

Significantly, however, the plaintiff's discrimination claim is not based on her reassignment; it is based on her termination. Although the plaintiff attempts to establish her claim by invoking every arguably improper action on the part of UPS, she can establish a wrongful termination claim only by using for support those instances that serve as the basis for her termination, not those that involve the sequence of events leading up to her reassignment.

A proper comparator for purposes of determining the third element of a wrongful termination claim is one who is "similarly situated in all relevant respects." Holifield v. Reno, 115 F.3d 1355, 1562 (11th Cir. 1997). This requires the comparator to be

nearly identical to the plaintiff.  Wilson v. B/E Aeorspace, Inc., 376 F.3d 1079, 1091 (11th Cir. 2004).

In this case, the plaintiff's only comparator is her replacement at her old position who was hired by her former supervisors.  However, the person who replaced the plaintiff as an operations finance supervisor after her reassignment, Mr. Villalba, is not a sufficiently, similarly situated individual with respect to her termination from her subsequent position as a risk analyst or her new supervisor who actually terminated her employment.

Because the plaintiff claims wrongful termination, the only proper comparator is an individual who performed the same or similar function as the position the plaintiff was terminated from, not the position that she was reassigned from.  Here that individual is the one other person who reported to Ms. Blaise in the COD operations department at the time of the plaintiff's employment, which is Ms. Gunn, an African-American female. Alternatively, that individual could be the plaintiff's replacement for the risk analyst position, but that person was Delores Brown, also an African-American female.  Thus, because the only proper comparators in this case are within the same class as the plaintiff -- i.e., they are also African-American females -- the plaintiff cannot make any showing of a similarly situated employee outside of

11

her class, such as a non-African-American or male, having received more favorable treatment than the plaintiff.

The plaintiff's argument that Mr. Villalbo's better treatment by the plaintiff's former supervisors, Mr. Suba and Mr. Rubright, shows a similarly situated employee having received more favorable treatment lacks merit. Even if it were true that the plaintiff's former supervisors did harbor some racial animus, there is no evidence showing that they had anything to do with Ms. Blaise's decision to terminate the plaintiff. Consequently, their views are not relevant for determining whether the plaintiff has met her initial burden. Holifield, 115 F.3d at 1564. Therefore, the court concludes that the plaintiff cannot establish a prima facie case of discrimination and, accordingly, the plaintiff has failed to establish the existence of an element essential to her § 1981 claim.

Additionally, even if plaintiff could establish a prima facie case, summary judgment is still warranted because the plaintiff cannot show that the reasons for her termination were a pretext for discrimination.

First, UPS's burden to show that the plaintiff's termination was based on legitimate, non-discriminatory reasons is "exceedingly light." Holifield, 115 F.3d at 1564. This burden can be met if

UPS points to "a clear and reasonably specific factual basis" for the plaintiff's termination.  Chapman v. AI Transp., 229 F.3d 1012, 1034 (11th Cir. 2000).

UPS's factual basis supporting its actions is limited to the plaintiff's performance as a risk analyst reporting to Ms. Blaise. The facts show that after she was reassigned as a risk analyst, the plaintiff repeatedly failed to meet her performance objectives although she had received training for the newly created position and although she understood that her new supervisor expected her to perform better.  Consequently, Ms. Blaise first verbally counseled the plaintiff and gave her time to improve, after which Ms. Blaise issued a more formal written warning with specific goals and performance criteria, and she placed the plaintiff on probation. Nevertheless, Ms. Blaise ultimately determined that the plaintiff's repeated failure to meet her performance goals, in conjunction with her failure to take more responsibility for her job, necessitated terminating the plaintiff's employment.  Viewing these facts in a light most favorable to the plaintiff, the court concludes that UPS's asserted factual basis for termination is sufficient to meet its burden to articulate a legitimate, non-discriminatory reason. The fact that Ms. Blaise's reasons for terminating the plaintiff

were largely subjective does not render them any less legitimate or any more discriminatory.  <u>Chapman</u>, 229 F.3d at 1034.

Although UPS has sufficiently established a legitimate, non-discriminatory reason, the plaintiff can nevertheless establish discrimination by pointing to evidence showing that the asserted reasons are a pretext for discrimination.  Avoiding summary judgment in this respect requires a showing that UPS's asserted reasons were false and that the actual reason was discrimination.  <u>Brooks v. County Comm'n of Jefferson County, Ala.</u>, 446 F.3d 1160, 1163 (11th Cir. 2006).

The plaintiff's only showing of pretext is regarding her experience as an operations finance supervisor, the position she held before being reassigned as a risk analyst.  Even when viewed as true, the plaintiff's assertions that her replacement in her old position, a non-African-American male, was given more support than she ever was and enjoyed a closer relationship with her former supervisors, who were also non African-American males, these facts are not probative for purposes of determining whether the reasons supporting her termination from her new position were pretextual.

Moreover, showing pretext in this case is even more demanding because the person who decided to terminate the plaintiff, Ms. Blaise, was the same race and gender as the plaintiff.  When the

14

decision-maker is in the same class as the plaintiff, it is very difficult to show a discriminatory motive.  See Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1471 (11th Cir. 1991).  The plaintiff has shown nothing that would reasonably overcome this particular difficulty.

Even when viewed in a light most favorable to the plaintiff, it is clear that the only evidence of a pretext is the facts surrounding the plaintiff's reassignment, not her termination.  However, establishing that the reasons for the reassignment were a pretext is neither relevant nor probative in terms of proving a pretext for discriminatory termination.  Therefore, even if the plaintiff has made a prima facie case of discrimination, summary judgment is still warranted because she has failed to make a sufficient showing that UPS's legitimate, non-discriminatory reasons were merely pretextual.

### FMLA

The second count alleges that UPS terminated the plaintiff in retaliation for her having taken leave under the Family and Medical Leave Act, 29 U.S.C.A §§ 2601-2654 (2007).  A FMLA retaliation claim based on circumstantial evidence, such as the one here, is analyzed under the same burden shifting framework utilized to evaluate employment discrimination claims.  Strickland v. Water

Works and Sewer Bd., 239 F.3d 1199, 1207 (11th Cir. 2001).
Accordingly, a retaliation claim requires a plaintiff to first
establish a prima facie case of discrimination, and then UPS must
show a legitimate, non-discriminatory reason for terminating the
plaintiff, which the plaintiff can overcome if she shows that those
reasons are merely a pretext.  To establish a retaliation claim,
the plaintiff must show that she (1) engaged in a protected
activity, (2) suffered an adverse employment action, and (3) the
action was causally connected to the activity.  Id.

For purposes of this claim, it is undisputed that the
plaintiff has established the first and second prongs; she took
FMLA leave while working for Ms. Blaise in the COD operations
department, and she was terminated after she returned from FMLA
leave.  At issue is the causal relationship: whether the plaintiff
was terminated because she took FMLA leave.

The only fact that the plaintiff relies on to show a causal
relationship is that the plaintiff was fired less than a month
after returning from FMLA leave.  This temporal proximity, however,
is insufficient by itself to establish a prima facie case of
retaliation.  The Eleventh Circuit has held that "when an employer
contemplates an adverse employment action before an employee
engages in protected activity, temporal proximity between the

protected activity and the subsequent adverse employment action does not suffice to show causation." Drago v. Jenne, 453 F.3d 1301, 1308 (11th Cir. 2006).

Here, the plaintiff was repeatedly counseled for poor performance before taking FMLA leave. She was issued a verbal and written warning, and she was placed on probation before her leave. Additionally, when she returned to work, the plaintiff's supervisor advised her that the written warning was still in effect and that she was still on probation. One of the provisions of her probation was that she could be terminated at any time for not making improvements. Thereafter, she was afforded additional time to meet her performance objectives, and she met daily with her supervisor to monitor her progress. The plaintiff does not point to any evidence showing that Ms. Blaise's decision to terminate her nearly a month after she returned from FMLA leave was influenced in any way by the plaintiff's having taken such leave.

Thus, even when viewed in a light most favorable to the plaintiff, the evidence is clear that UPS contemplated, and indeed completed, all of the necessary preliminary steps for taking an adverse employment action before the plaintiff exercised her right to take FMLA leave. The basis for her termination was the failure to meet her performance objectives, not her having taken FMLA

leave.  The mere fact that her termination came approximately one month after returning from FMLA leave is not enough to raise an inference that her termination was on account of having exercised her rights.  Therefore, the plaintiff has failed to establish a prima facie case of retaliation, and summary judgment is warranted.

### Intentional Infliction of Emotional Distress

To establish a claim of intentional infliction of emotional distress, the plaintiff must show (1) intentional or reckless conduct, (2) that conduct must be extreme and outrageous, (3) there must be a causal connection between the conduct and the emotional distress, and (4) the emotional distress must be severe.  Biven Software, Inc. v. Newman, 222 Ga. App. 112, 113 (1996).

The plaintiff asserts that she suffered emotional distress due to being reassigned the high expectations placed on her in her subsequent position as a risk analyst.  Further, the plaintiff contends that Ms. Blaise exhibited extreme and outrageous conduct at one point by banging her hands on her desk in frustration during a meeting with the plaintiff, which caused the plaintiff particular anxiety because she was in an unusually fragile state of mind having just returned from FMLA leave for severe mental and emotional distress.

18

Taken as a whole, however, the plaintiff points to no evidence that, under the law, would constitute extreme and outrageous conduct. To the extent that the plaintiff may have been distressed by her job reassignment, the high standards of performance in her new job, and even the allegedly insensitive and harsh demands of Ms. Blaise, those instances do not amount to extreme or outrageous conduct sufficient to support a claim. Biven Software, 22 Ga. App. at 113-14 ("Comments made within the context of one's employment may be horrifying or traumatizing, but are generally considered a common vicissitude of ordinary life.")(internal quotations and citations omitted).

In the employment context, Georgia Courts do not generally consider adverse employment actions to be "extreme or outrageous" conduct. That is because an intentional infliction of emotional distress claim is not an available cause of action for someone whose job simply causes her distress. Rather, liability attaches only where the conduct causing the distress is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Jarrard v. United Parcel Service, Inc., 242 Ga.App. 58, 59 (2000). Negative performance evaluations, demanding business practices, and termination are

19

recognized as common aspects of being employed.   Id. at 59-60
(noting that sufficiently egregious conduct "does not include mere
insults, indignities, threats, annoyances, petty oppressions, or
other vicissitudes of daily living.").

The plaintiff candidly admits that the controlling law in
Georgia, especially in the employment context, imposes a high
standard that she cannot meet.   Instead, the plaintiff argues that
as a matter of policy she ought to be afforded the opportunity to
present her case to a jury because the standard expressed in Bivens
Software and elsewhere is "an insult to plaintiffs, especially
employees who are already disadvantaged by an imbalance of power."
[Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J., 52, Doc. No. 62.]
She also argues that employees are at a disadvantage because of
such things as the "set-up-to-fail" syndrome.   Although it is
doubtful the plaintiff's arguments in this regard have any merit,
they are, in any event, certainly not grounded in the law and,
therefore, readily fail to be even remotely persuasive.

Because the basis for the plaintiff's intentional infliction
of emotional distress claim is the type of conduct that, although
perhaps causing distress, is nothing more than "a common
vicissitude of ordinary life," which does not rise to the level of
extreme and outrageous conduct, she has failed to make a sufficient

20

showing of any evidence that would support this claim.  Therefore,
summary judgment on this claim is warranted.

**CONCLUSION**

For the foregoing reasons, UPS's Motion for Summary Judgment
[Doc. No. 44] is GRANTED.  Also pending are two procedural motions
by the plaintiff.  Although unnecessarily well in excess of the
page limit permitted by the local rules, the plaintiff's Motion for
Leave to File Excess Pages [Doc. No. 50] is GRANTED; the
plaintiff's Motion for Extension of Time [Doc. No. 52] is also
GRANTED.


SO ORDERED, this 14th day of November, 2007.


ROBERT L. VINING, JR.
Senior United States District Judge